IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER KILNAPP,** | ) | CASE NO.: 1:22-CV-01225-CAB |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **CITY OF CLEVELAND**, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION OF DEFENDANT BAILEY GANNON FOR JUDGMENT ON THE PLEADINGS**

Now comes Defendant Bailey Gannon ("Officer Gannon"), in his individual capacity, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and respectfully requests that this Court dismiss the claims filed by Plaintiff Jennifer Kilnapp ("Kilnapp") (*Doc. 1*). Plaintiff cannot obtain the relief that she seeks against him as a matter of law. Officer Gannon is shielded from suit and liability by qualified immunity because: 1) Plaintiff cannot demonstrate a violation of her constitutional rights under the Fourth or the Fourteenth Amendments for an unintentional injury that he may have caused; and 2) any alleged constitutional violation was not clearly established at the time of the conduct. Otherwise, Officer Gannon is immune from her claims because of the common law

Fireman Rule, and those policies as adopted by the current Worker Compensation system.

Respectfully submitted,

By: */s/ J.R. Russell*

Craig J. Morice (0065424)
James R. Russell, Jr. (0075499)
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: cmorice@clevelandohio.gov
Email: jrussell2@clevelandohio.gov
*Attorneys for Defendant Bailey Gannon*

**TABLE OF CONTENTS**

STATEMENT OF ISSUES……………………………………………………………………iv

TABLE OF AUTHORITIES…………………………………………………………….v-vii

SUMMARY OF ARGUMENT…………………………………………………………..iii, 1

FACTUAL ALLEGATIONS……………………………………………………………..1-3

LEGAL STANDARD……………………………………………………………………..4-6

LAW AND ARGUMENT………………………………………………………………..7-17

A. Kilnapp is unable to Establish a Constitutional Violation sufficient for an Excessive Force Claim under the Fourth Amendment………………………………………………………..7

1. The seizure must be intentional, not the unintended consequences of the official's actions….7

2. Even if Officer Gannon's actions were considered as a seizure of Kilnapp, Officer Gannon's actions were constitutionally reasonable under the circumstances……………………………….10

B. Kilnapp is unable to Establish a Constitutional Violation of her Fourteenth Amendment Rights…………………………………………………………………………………………..12

C. Even if Kilnapp could meet the first Element Necessary to Overcome Qualified Immunity, there were no Clearly Established Violations of Kilnapp's Rights…………………………....14

D. Kilnapp's claims against Officer Gannon are barred by the Common Law Doctrine of the Fireman's Rule and Immunity to Fellow Servants under the Worker Compensation System…...15

CONCLUSION………..……………………………………………………………………17

CERTIFICATE OF COMPLIANCE………………………………………………..……...18

CERTIFICATE OF SERVICE…………………………………………………………...18

## STATEMENT OF ISSUES

1. Where Defendant Bailey Gannon did not intend to shoot or seize Plaintiff Jennifer Kilnapp, whether she can demonstrate sufficient facts to overcome qualified immunity and demonstrate that Defendant Bailey Gannon seized Plaintiff Jennifer Kilnapp as contemplated by the Fourth Amendment?
2. Where Defendant Bailey Gannon responded to an armed, disturbed man with a loaded firearm in his hands, who attempted to assault him, whether an unintentional alleged seizure of Plaintiff Jennifer Kilnapp was objectively unreasonable under the circumstances for Defendant Bailey Gannon to be held personally liable for an alleged constitutional violation under 42 U.S.C. § 1983?
3. Whether there are sufficient facts upon which Plaintiff Jennifer Kilnapp can rely to establish that Defendant Bailey Gannon acted maliciously and sadistically for the very purpose of causing harm on July 20, 2020, in order for Plaintiff Jennifer Kilnapp to make an excessive force claim in violation of her Fourteenth Amendment rights?
4. Whether Plaintiff Jennifer Kilnapp can present the applicable precedent relating to this particular circumstance to show that Defendant Bailey Gannon violated clearly established law to overcome qualified immunity?
5. Where Plaintiff Jennifer Kilnapp was injured in the course of her official duties as a police officer, whether she can maintain her two claims as a matter of law in light of the common law doctrine of the Fireman's Rule, and the related policy and statutory immunity provided by the Ohio Worker Compensation System?

## TABLE OF AUTHORITIES

**Cases Cited** **Page**

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001)…………………………………………..5

*Anderson v. Creighton*, 482 U.S. 635, 107 S.Ct. 3034 (1987)…………………………………....6

*Ansley v. Heinrich*, 925 F.2d 1339 (11th Cir.1991)……………………………………………..8

*Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074 (2011)……………………………………..6

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)………………………………………..4

*Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017)……………………………………...5

*Baker v. City of Trenton*, 936 F.3d 523 (6th Cir. 2019)………………………………………..11

*Barrera v. City of Mount Pleasant*, 12 F.4th 617 (6th Cir. 2021)…………………………..........6

*Bell v. City of Southfield*, 37 F.4th 362 (6th Cir. 2022)……………………………………….2, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)……………………………..5

*Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378 (1989)………………………...7, 8, 9, 12

*Buck v. City of Highland Park, Michigan*, 733 Fed. Appx. 248 (6th Cir. 2018)………………….13

*Burchett v. Kiefer*, 310 F.3d 937 (6th Cir.2002)………………………………………………..10

*Carson v. Headrick*, 900 S.W.2d 685 (Tenn. 1995)……………………………………………...15

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009)…………………………………..11

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006)…………………………………………...5, 10

*Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000)………………………………..8, 9, 12, 13

*Coffey v. Carroll*, 933 F.3d 577 (6th Cir. 2019)……………………………………………………6

*Commercial Money Ctr., Inc. v. Ill Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007)……………...4, 5

*County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708 (1988)………………………..7, 12

*Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001)……………………………………7, 12

*District of Columbia v. Wesby*, ---U.S.---, 138 S. Ct. 577 (2018)………………………………...6

*Eidson v. Tenn. Dept. of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007)………………………...4

*Fisher v. City of Memphis*, 234 F.3d 312 (6th Cir. 2000)……………………………………………….9

*Gallup v. Exxon Corp.*, 70 Fed. Appx. 737 (5th Cir. 2003)……………………………………….15

*Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989)…………………………………...10, 12

*Hack v. Gillespie*, 74 Ohio St.3d 362, 658 N.E.2d 1046 (1996)…………………………..15, 16

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982)……………………………………..5

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009)…………………………………....4

*Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 748 N.E.2d 1111 (2001)…………………..16

*Howse v. Hodous*, 953 F.3d 402 (6th Cir. 2020)……………………………………………………..6

*Kaiser v. Strall*, 5 Ohio St. 3d 91, 449 N.E.2d 1 (1983)…………………………………………….16

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)………………………………………………….....6

*Mitchell v. Forsyth*, 472 U.S. 511, S.Ct. 2806 (1985)……………………………………….……5

*Mullins v. Cyranek*, 805 F.3d 760 (6th Cir. 2015)…………………………………………………...11

*New Eng. Health Care Empl. Pension Fd. v. E&Y, LLP*, 336 F.3d 495 (6th Cir. 2003)……..……2

*Passa v. City of Columbus*, 123 Fed. Appx. 694 (6th Cir. 2005)…………………………………..2

*Pearson v. Calahan*, 555 U.S. 223, 129 S.Ct. 808 (2009)……………………………………5, 6

*Peete v. Metro. Gov't of Nashville & Davidson County*, 486 F.3d 217 (6th Cir. 2007)…………7, 8

*Railroad Co. v. Baugh*, 149 U.S. 368, 13 S.Ct. 914 (1893)……………………………………16

*Red Zone 12, LLC v. City of Columbus*, 758 Fed. Appx. 508 (6th Cir. 2019)…………………...4, 5

*Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011)……………………………………………7

*Rucinski v. County of Oakland*, 655 Fed. Appx. 338 (6th Cir. 2016)……………………………..11

*Rucker v. Harford County*, 946 F.2d 278 (4th Cir. 1991)………………………………………..8

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001)……………………………………………6

*Scott v. Clay County*, 205 F.3d 867 (6th Cir. 2000)……………………………………...10, 11

*Troupe v. Sarasota County*, 419 F.3d 1160 (11th Cir. 2005)……………………………………7

*Tucker v. Middleburg Legacy Place, LLC*, 539 F.3d 545 (6th Cir. 2008)…………...……………..5

*United States v. Moriarty*, 8 F.3d 329 (6th Cir. 1993)…………………………………...………4

*White v. City of Cleveland*, 1:17-cv-01165, 2020 WL 7640932 (N.D. Ohio Dec. 23, 2020)……...6

*White v. Pauly*, ---U.S.---, 137 S.Ct. 548 (2017)……………………………………………..6

*Wholesale Electric Supply Co.*, 429 Mich. 347, 415 N.W.2d 178 (1987)………………………..15

**Rules Cited**

*Fed.R.Evid. Rule 201*…………………………………………………………...….........2

*Fed.R.Civ.Pro. Rule 12*………………………………………………………………........4

**Statutes Cited**

*42 U.S.C. § 1983*……………………………………………………………………...1, 8, 12, 14

*R.C. 4123.741*…………………………………………………………………………......16

# MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT

## I. SUMMARY OF ARGUMENT

Kilnapp is unable to establish a Constitutional violation sufficient for an excessive force claim under the Fourth Amendment. In order to establish a seizure under the Fourth Amendment, it must be intentional, not the unintended consequences of the official's actions. Even if Officer Gannon's actions were considered as a seizure of Kilnapp, Officer Gannon's actions were constitutionally reasonable under the circumstances. Moreover, Kilnapp is unable to establish a Constitutional violation of her Fourteenth Amendment rights under that heightened standard. Even if Kilnapp could meet the first element necessary to overcome qualified immunity, there were no clearly established violations of Kilnapp's rights. Finally, Kilnapp's claims against Officer Gannon are barred by the common law doctrine of the Fireman's Rule and immunity to fellow servants under the Worker Compensation System.

## II. FACTUAL ALLEGATIONS

Kilnapp alleges two causes of action in her Complaint for excessive force under the Fourth Amendment and under the Fourteenth Amendment, pursuant to "42 U.S.C. §1983." (*Doc. 1*, p. 16-18). She seeks "recovery for lost wages, benefits, and other economic loss" because she has not returned as a City of Cleveland Police Officer since July 20, 2020 (*Doc. 1*, p. 4 and 10). She seeks "emotional distress damages and other compensatory damages…" *Id.* This is the same relief that she sought from the Bureau of Worker's Compensation in Claims Number 20-151465 (*Exhibit C*). She seeks an award of "punitive damages against Gannon in his individual capacity." *Id.*, p. 10.

**A. Police Officers Kilnapp and Gannon Respond to a Call Regarding An Armed Suspect in a Residence.**

Officer Gannon was a rookie assigned to Kilnapp (*Doc. 1*, 4). Kilnapp was the superior officer on scene during the incident. *Id.*

On the early morning of July 20, 2020, Officer Gannon and Kilnapp responded to a home at 2023 E. 81st Street in Cleveland, Ohio (*Doc. 1*, p. 4; *Exhibit A*; *Exhibit B*, 00:23).[1] They responded to call about an emotionally disturbed armed man with a gun, Darryl Borden ("Borden"), who refused to leave the boarding home in which he was staying. *Id.* There was a report that he was shooting at the floor. Indeed, investigators subsequently confirmed that Borden discharged five rounds that evening, including at least two in the direction of where Officer Gannon once stood (*Exhibit A*, p. 1; *Doc. 1*, p. 8).

After arriving on scene, a resident of the home told the officers that Borden was on the second-floor (*Exhibit B*, 00:23; *Doc. 1*, p. 4). Plaintiff had her firearm un-holstered before she opened the door to the residence (*Exhibit B*, 00:07-00:21). She entered first. *Id.* The resident told Officer Gannon that Borden was upstairs, and "he's got a gun." *Id.*, at 00:37. They believed Borden was upstairs in "number 4." *Id.*, 00:51-55. Kilnapp agreed, "He's upstairs." *Id.* The officers climbed the staircase in the dark house near the bedroom where Borden was staying (*Doc. 1*, 4; *Exhibit B*, 01:00-01:32). Kilnapp began the assent first. *Id.*

[1] The court may take judicial notice of *Exhibit A*, as it is a public record maintained by the Cuyahoga County Clerk of Courts, for which the existence or contents prove facts not subject to a reasonable dispute. *Fed.R.Evid. 201(b)(2)*; *New Eng. Health Care Empl. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Passa v. City of Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005). *Exhibit B* is a redacted copy of the WCS footage referenced in the Complaint, known as *Extraction_1.1)_(Clip 1.1)_2003_E._81_UDFIT_#20-03_Gannon_#1579* (*Doc. 1*, p. 7). *See also Bell v. City of Southfield, infra.*, 37 F.4th 362 (6th Cir. 2022).

After they reached the second floor, Kilnapp called out to inquire who else was upstairs. *Id.* No one responded. The other resident from downstairs informed the officers that Borden was likely in the bathroom (*Exhibit B*, 01:40). Officer Gannon then moved into the hallway in which the bathroom was located (*Exhibit B*, 01:43-01:50; *Doc. 1*, p. 5). Kilnapp stood a few feet to the other side of the staircase. *Id.*

**B. Borden Surprises Gannon with a Weapon, and Attempts to Assault Him.**

Officer Gannon opened the bathroom door with some difficulty (*Exhibit B*, 01:43-01:50; *Doc. 1*, p. 5). Borden surprised Officer Gannon, standing in the bathroom with a firearm in his hand. *Id.* In that intense, split-second moment, Officer Gannon turned and hurried down the staircase. *Id.* "Borden fired [at least two of the five rounds] from inside the bathroom into the bathroom door before the bullets landed in the wall opposite him." (*Exhibit A*; *Doc. 1*, p. 9). This was the direction where Officer Gannon stood when he opened the door (*Exhibit B*, 01:43-01:50; *Doc. 1*, p. 9). Officer Gannon fired one round toward Borden from the staircase (*Exhibit B*, 01:53).[2]

Officer Gannon retreated to outside of the residence to find cover (*Exhibit B*, 02:06). He shouted, "Kilnapp! Let's go!" *Id.*, 02:18. He later discovered that his partner was shot. *Id.*, 02:28-2:33. He told her to get in the CPD zone car. *Id.* Officer Gannon intended to take his partner to the hospital if necessary, before reaching assistance by radio. *Id.* He waited with her until EMS arrived, reassuring her, "we're going to take care of you, okay." *Id.*, 07:14. Borden subsequently pled guilty to "attempted Felonious Assault (Peace Officer)…(P.O. Bailey Gannon #1579)" in *State v. Borden*, Cuyahoga County Case No. CR-20-651870-A (*Exhibit A*).

[2] Officer Gannon fired a second round unintentionally.

## III. LEGAL STANDARD

### A. Law Governing Motions for Judgment on the Pleadings.

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a Court may dismiss a complaint on the pleadings if a plaintiff fails to "raise a right to relief above the speculative level," and fails "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009). The "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007), *quoted by Red Zone 12, LLC v. City of Columbus*, 758 Fed. Appx. 508, 512 (6th Cir. 2019).

To be sure, a trial court construes the complaint in the light most favorable to the nonmoving party, accepts the well-pled factual allegations as true, and determines whether the complaint contains enough facts to make the legal claims facially plausible. *Id., citing United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993). Nevertheless, conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Eidson v. Tenn. Dept. of Children's Servs*., 510 F.3d 631, 635 (6th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully" but is "not akin to a probability requirement." *Id.* The Court should apply the *Twombly* standard to both motions to dismiss and motions for judgment on the pleadings. *Red Zone 12, LLC*,

*supra.*, *citing Tucker v. Middleburg Legacy Place, LLC*, 539 F.3d 545, 550 (6th Cir. 2008).

The trial court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Red Zone 12, LLC*, *supra.*, 758 Fed. Appx. at 513, *citing Commercial Money Ctr.*, 508 F.3d at 336. Although the trial court "primarily considers the allegations in the complaint," it may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint…" *Id.*, *quoting Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). Further, a trial court may rely on video evidence, such as that obtained from a body camera, at "the motion-to-dismiss stage" in qualified immunity cases. *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022), *citing Bailey v. City of Ann Arbor*, 860 F.3d 382, 386-387 (6th Cir. 2017).

**B. Law Governing Qualified Immunity.**

Officer Gannon asserts that he is entitled to qualified immunity in this case. Qualified immunity shields public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S. Ct. 2727 (1982). It is not a "mere defense to liability," it is *immunity from suit. Mitchell v. Forsyth*, 472 U.S. 511, 526, S.Ct. 2806 (1985).

Once raised, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006). In order to meet this burden, a plaintiff must establish: 1) whether the facts show the officers violated a constitutional right, and 2) whether the violations were clearly established at the time of the challenged conduct. *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021), *citing Pearson v. Calahan*, 555 U.S. 223, 232, 129 S.Ct.

808 (2009). These steps may be addressed in any order, and a defendant officer need only prevail on one of them to be granted immunity. *Coffey v. Carroll*, 933 F.3d 577, 584 (6th Cir. 2019); *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

The Supreme Court reiterated, "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ---U.S.---, 137 S.Ct. 548, 552 (2017), *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074 (2011). Clearly established "means that the law is so clear at the time of the incident that every reasonable officer would understand the unlawfulness of his conduct." *District of Columbia v. Wesby*, ---U.S.---, 138 S. Ct. 577, 589 (2018). "It is not enough that the rule is suggested by then-existing precedent." *Id.* The standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* The contours of the rule must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id., quoting Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Wesby, supra.*, 138 S. Ct. at 589-590, *quoting Anderson v. Creighton*, 482 U.S. 635, 641, 107 S.Ct. 3034 (1987). Thus, courts "must examine the *particular* situation that [the defendant officers] confronted and ask whether the law clearly established that their conduct was unlawful." *White v. City of Cleveland*, 1:17-cv-01165, 2020 WL 7640932,*11 (N.D. Ohio Dec. 23, 2020), *quoting Howse v. Hodous*, 953 F.3d 402, 407 (6th Cir. 2020). As discussed below, Kilnapp cannot meet either prong of the test necessary to overcome qualified immunity.

## IV. LAW AND ARGUMENT

### A. Kilnapp is unable to Establish an Excessive Force Claim under the Fourth Amendment.

Plaintiff alleges in her Complaint that Gannon used excessive force against her, in violation of her Fourth Amendment rights when she was "seized," or unintentionally struck by a bullet from Officer Gannon's firearm (*Doc. 1*, p. 16). Most trial courts analyze excessive force claims under the Fourth Amendment's protection against unreasonable seizures when a seizure occurred. *Darrah v. City of Oak Park*, 255 F.3d 301, 305-306 (6th Cir. 2001), *citing County of Sacramento v. Lewis*, 523 U.S. 833, 843-844, 118 S.Ct. 1708 (1988). A plaintiff must demonstrate that a seizure occurred, and that the force used for the seizure was objectively unreasonable. *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011).

#### 1. The seizure must be intentional, not the unintended consequences of the official's actions.

A "seizure" is defined as an "intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously to submit." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378 (1989), *cited by Peete v. Metro. Gov't of Nashville & Davidson County*, 486 F.3d 217, 220 (6th Cir. 2007). Thus, a violation of the Fourth Amendment requires an intentional acquisition of this physical control. *Rodriguez, supra.*, 637 F.3d 675, 681 (6th Cir. 2011), *citing Troupe v. Sarasota County*, 419 F.3d 1160, 1166 (11th Cir. 2005) (it is "intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim").

A seizure within the context of the Fourth Amendment does not occur "whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and

governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower, supra.*, 489 U.S. 593, 596–597, 1381 (*emphasis in original*); *Peete, supra.*, 486 F.3d 217, 221 (when the intent is not "to enforce the law, punish, deter, or incarcerate, there is no federal case authority creating a constitutional liability for the negligence, deliberate indifference, and incompetence…").

A seizure occurs only when "one is the intended object of a physical restraint by an agent of the state." *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991). Accordingly, a "seizure" does not occur even if the act of the restraint itself is intended (such as the firing of a weapon), when it restrains one not intended to be restrained. *Id.* at 281, *citing Ansley v. Heinrich*, 925 F.2d 1339, 1344 (11th Cir.1991) (holding that "unintended consequences of government action [cannot] form the basis for a Fourth Amendment violation.").

In *Claybrook v. Birchwell*, the Sixth Circuit determined that police officers who unintentionally shot and injured an innocent bystander while confronting an armed suspect did not commit a Fourth Amendment "seizure" of the bystander. *Id.*, 199 F.3d 350 (6th Cir. 2000). In that case, police officers unintentionally shot, the bystander plaintiff, as she sat inside of a vehicle while they confronted an armed man near the vehicle. *Id.* at 355. In finding that the plaintiff was not "seized," the court noted "the Fourth Amendment 'reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries inadvertently inflicted upon an innocent third party by police officers' use of force while attempting to seize a perpetrator." *Id.* at 359, *citing Brower, supra.*, at 596. The authorities could not "seize" any person other

than one who was a deliberate object of their exertion of force. *Id. Compare with Fisher v. City of Memphis*, 234 F.3d 312, 318-319 (6th Cir. 2000) ("shooting at the driver of the moving car, he intended to stop the car, effectively seizing everyone inside, including the Plaintiff.")

Here, as in *Claybrook,* Kilnapp was not "seized" under the Fourth Amendment. Kilnapp was more akin to a bystander, who was unintentionally shot. "Borden fired from inside the bathroom into the bathroom door before the bullets landed in the wall opposite him." (*Exhibit A*; *Doc. 1*, p. 9). She bases her entire cause of action on the argument that Officer Gannon "intended to fire his weapon…" (*Doc. 1*, p. 15). Kilnapp alleges that "Gannon shot Kilnapp incorrectly believing she was Borden following him." *Id.* By Kilnapp's own allegations, Officer Gannon never attempted to exert any force towards her. The fact that Officer Gannon returned fire toward Borden cannot satisfy the requirements for a seizure.

"Kilnapp was able to get out of the house on her own but quickly realized she had been shot." (*Doc. 1*, 6). He did not prevent her from leaving the residence where Borden hid in wait (*Exhibit B*, 2:06-2:33). She left the residence. Moreover, Officer Gannon intended to remove Kilnapp as far away from the dangerous situation as possible. *Id.* He intended to escape from, with his partner, an armed assailant who attempted to assault him (*Exhibit A*). He helped her onto the emergency transportation away from the scene. *Id.*, 7:16. Accordingly, because there can be no Fourth Amendment seizure for the unintentional injury of a person that is not the intended object of physical restraint, Kilnapp's Fourth Amendment excessive force claims must be dismissed.

**2. Even if Officer Gannon's actions were considered as a seizure of Kilnapp, Officer Gannon's actions were constitutionally reasonable under the circumstances.**

Assuming *arguendo* that the Fourth Amendment objective reasonableness standard applies in this case, Officer Gannon's actions were constitutionally reasonable under the circumstances. Kilnapp did not allege sufficient facts to overcome Officer Gannon's qualified immunity defense.

When an arrestee is "seized" by means of deadly force, the plaintiff must prove that, under the pertinent circumstances, the means used to detain the suspect were objectively unreasonable. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989) (claims that law enforcement officers have used excessive force in a seizure of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard). Whether a seizure is reasonable depends on the totality of the circumstances, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006), *citing Graham, supra.*, 490 U.S. at 396. Particularly as it relates to a qualified immunity defense, "reasonableness must be judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight." *Id.* "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Id.*, *citing Burchett v. Kiefer,* 310 F.3d 937, 944 (6th Cir.2002).

The Sixth Circuit routinely found that police officers who discharged their weapon in response to an armed suspect acted reasonably under the Fourth Amendment. *See Scott v. Clay County,* 205 F.3d 867, 878 (6th Cir. 2000) (holding that deputy's actions

in firing at fleeing vehicle in order to seize its occupants, which resulted in unintentional injury to the plaintiff's passenger, were objectively reasonable and did not violate the plaintiff's rights); *Chappell v. City of Cleveland*, 585 F.3d 901, 916 (6th Cir. 2009) (finding that police officers did not use excessive force or act unreasonably when they shot and killed an armed suspect who startled the officers by jumping out of a bedroom closet). *See also Baker v. City of Trenton*, 936 F.3d 523, 534 (6th Cir. 2019) (holding that a police officer who discharged his gun when confronted by a blade wielding man in a confined area acted reasonably); *Mullins v. Cyranek*, 805 F.3d 760, 767 (6th Cir. 2015) (officer acted reasonably when he shot twice at a suspect who had a firearm in a rapidly escalating situation that he believed posed a severe threat to himself and others); *Rucinski v. County of Oakland*, 655 Fed. Appx. 338, 343 (6th Cir. 2016) (officers acted reasonably in response to suspect who brandished a knife within feet of them). A trial court may determine that actions in these split-second scenarios are reasonable as a matter of law.

By the facts alleged in Kilnapp's Complaint, Officer Gannon acted objectively reasonably from a constitutional analysis as a matter of law. Both Kilnapp and Officer Gannon were in confined area with a disturbed suspect, known to be armed (*Doc. 1*, p. 4). Borden did not respond to Kilnapp's shouts inside the residence (*Exhibit B*, 01:00-01:32). He did not respond to the shouts from the resident from below. *Id.* He was concealed with a firearm in the close confines of the upstairs area. *Id.* Borden fired his weapon at the place where Officer Gannon stood (*Doc. 1*, p. 9; *Exhibit A*). The armed and disturbed man surprised Officer Gannon after he opened the bathroom door. It all happened within a matter of seconds (*Exhibit B*, 01:50-01:53). Like in the aforementioned cases, Officer

Gannon did not act unreasonably from a Fourth Amendment perspective when he discharged his weapon in response to a threat confronting him.

**B. Kilnapp is unable to Establish a Constitutional Violation of her Fourteenth Amendment Rights.**

As discussed above, a plaintiff may generally not seek remuneration under *18 U.S.C. § 1983* through the Fourth Amendment for physical injuries inadvertently inflicted upon an innocent bystander because officers cannot seize any person other than one who was a deliberate object of their exertion of force. *County of Sacramento v. Lewis*, 523 U.S. 833, 844, 118 S.Ct. 1708, 1715–1716, (1998), *citing Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378 (1989). However, there are limited circumstances where one could seek relief under the substantive component of the Fourteenth Amendment *Lewis, Id.*, 523 U.S. 833, 844*, cited by Darrah, supra.*, 255 F.3d 301, 306 (6th Cir. 2001).

Under the Fourteenth Amendment, a plaintiff must surpass a substantially higher hurdle than that which is required under the "objective reasonableness" test of *Graham*. *Id.* at 306. The "test applied by the Supreme Court to determine when governmental conduct reaches this threshold is to ask whether the alleged conduct 'shocks the conscience.'" *Id.* at 306, *citing Lewis*, *supra.* at 846. The Supreme Court, in *Lewis,* explained that whether governmental conduct shocks the conscience depends on the factual circumstances of the case, but also that different conscience-shocking standards apply depending on the circumstances in which the governmental action occurred. *Id*., *citing Lewis,* at 851–853. There is more deference toward an officer if the case involved "one of those 'rapidly evolving, fluid, and dangerous predicament[s] which precludes the luxury of calm and reflective pre-response deliberation[.]'" *Id., citing Claybrook, supra.*, 199 F.3d 350, 359 (6th Cir. 2000). In such rapidly evolving predicaments, an officer's

reflexive actions "shock the conscience" only if employed force "maliciously and sadistically for the very purpose of causing harm." *Id.*, 255 F.3d at 359.

In *Buck v. City of Highland Park, Michigan*, the Sixth Circuit found that a police officer's inadvertent shooting of an innocent bystander while firing at an armed assailant who was robbing a store did not shock the conscious under this higher burden. *Id.*, 733 Fed. Appx. 248, 250 (6th Cir. 2018). In *Buck*, officers arrived at a pawnshop after a silent alarm alerted them. *Id.* at 250. While there, an armed person startled the officers, and shot at them. *Id.* One of the officers returned fire, and inadvertently struck an innocent bystander, the plaintiff in that case. *Id.*

Considering the circumstances under which the officer unintentionally shot the plaintiff, the Sixth Circuit affirmed that the officers' actions did not shock the conscious because the officers had no opportunity to ponder or debate the "dangerous actions of [an] armed man." *Id.* at 253. As such, there were insufficient factual allegations that the officers used force maliciously and sadistically for the very purpose of causing harm. *Id.* Thus, the trial court properly granted the Motion for Judgment on the Pleadings. *Id.* at 254. *See also Claybrook v. Birchwell*, *supra.*, 199 F.3d 350, 360 (officers could not be held liable because the actions were not with "conscience shocking malice or sadism" towards the unintended shooting victim).

Here, these circumstances are similar to the two aforementioned cases where there was not a violation. Officer Gannon had no time to ponder or deliberate in a rapidly changing situation. At most, he had seconds to respond to a threat by Borden (*Exhibit B*, 01:50-01:53).

Accordingly, Officer Gannon's conduct can only cause a violation of Kilnapp's Fourteenth Amendment rights if he acted with conscience-shocking malice or sadism toward her. She states in a conclusory fashion that he "used force against Kilnapp maliciously and sadistically." (*Doc. 1*, p. 18). Yet, she alleges that he believed her to be Borden following close behind him (*Doc. 1*, p. 15). Kilnapp presents a model showing that Officer Gannon fired and struck the bathroom in which Borden was hiding. *Id.*, p. 8. Officer Gannon implored her to move away from a place where Borden could fire upon them (*Exhibit B*, 02:18). He only expressed care for her after he discovered that she was injured. *Id.*, 02:25-07:15. Kilnapp cannot present any facts to support a conclusion of malice or sadism. Even if Kilnapp could prove that Officer Gannon's reaction was contrary to policy or otherwise negligent - like in the *Buck* case - Kilnapp cannot prove a violation of her Fourteenth Amendment rights.

**C. Even if Kilnapp could meet the first Element Necessary to Overcome Qualified Immunity, there were no Clearly Established Violations of Kilnapp's Rights.**

Officer Gannon did not locate any case law that would put a reasonable official on notice that accidentally wounding his or her partner and fellow police officer is a firmly held violation of constitutional rights. There is no applicable case law in the Sixth Circuit for this particular situation where an officer accidentally struck his partner with a bullet from his service weapon to give rise to § 1983 cause of action. It is insufficient to use a general principle such as a police officer involved shooting can be an excessive use of force. The most analogous case law supports a finding of qualified immunity, i.e. the accidental shooting of someone other than a suspect is actionable only if the officer's actions were in the most malicious fashion designed to cause harm. All of the facts demonstrate that in a split-second decision, Officer Gannon reacted to a threat of deadly

force. Kilnapp may question his decisions made in hindsight. There is no precedent that negligent conduct that accidentally injured a co-employee could establish a constitutional violation in this particular circumstance. Therefore, Kilnapp cannot meet the elements necessary to overcome Officer Gannon's qualified immunity defense.

**D. Kilnapp's claims against Officer Gannon are barred by the Common Law Doctrine of the Fireman's Rule and Immunity of Fellow Servants under the Worker Compensation System.**

The "Fireman's Rule" is a doctrine that generally bars recovery by safety or emergency personnel for injuries sustained in responding to situations in the course of their official job duties. *Gallup v. Exxon Corp.*, 70 Fed. Appx. 737, 738 (5th Cir. 2003). A plaintiff must plead and demonstrate a heightened degree of culpability in order to meet any exception to a complete bar to recovery. *Id.* The doctrine is a common law rule of American Jurisprudence that has its origins from over 130 years ago. *Kreski v. Modern Wholesale Electric Supply Co.*, 429 Mich. 347, 358, 415 N.W.2d 178, 183 (1987), *now abrogated in that state by more recent state statutory adoption of rule*. Most jurisdictions adopted the common law rule based on the primary assumption of risk and public policy analysis. *Id.*, 429 Mich. 347, 360, 184 (police officer plaintiff could not recover because of the inherent dangers of entering a building as part of his duty to investigate).

The Fireman's Rule extends to police officers, as "grounded on policy considerations." *Hack v. Gillespie*, 74 Ohio St.3d 362, 365-366, 658 N.E.2d 1046, 1050 (1996). Mainly, police officers assume risks by the very nature of their chosen profession that are particular to their line of work. *Id.*, at 367; *Carson v. Headrick*, 900 S.W.2d 685, 690-691 (Tenn. 1995) (defendant's negligent actions did not meet exacting standard required for a possible exception).

There is no question that Kilnapp acted within the scope of her duties as a Cleveland Police Officer when she responded to call about a "disturbed man with a gun on the second floor of the boarding home he was staying in." (*Doc. 1*, p. 4; *Exhibit B*). They confronted a man with firearm. *Id.*, p. 5 and 9; *Exhibit A*. Both were involved in what unfortunately are the inherent dangers of police work. The common law "Fireman's Rule" applies to police officers injured by these inherently dangerous situations. As discussed above, the facts cannot support a finding that Officer Gannon acted with a malicious or sadistic purpose to cause an injury.

Likewise, another policy consideration underlying the common law "Fireman's Rule" defense is the availability of statutory compensation programs, such as worker compensation. "Fortunately, Ohio has statutory compensation schemes which can temper the admittedly harsh reality if one of our public servants is injured in the line of duty." *Hack, supra.*, 74 Ohio St.3d at 367, 1050. Those policy considerations remain in Ohio today, and provide another layer of immunity to any statutory or common law claim.

Worker compensation laws are unique social bargains in which employees give up their common-law remedies in exchange for greater assurance that they will receive reasonable compensation for a work-related injury. *Holeton v. Crouse Cartage Co.*, 92 Ohio St.3d 115, 119, 748 N.E.2d 1111, 1116 (2001). Pursuant to *R.C. 4123.741*:

> "No employee of any employer. . . shall be liable to respond in damages at **common law or by statute** for any injury…by any other employee of such employer in the course of and arising out of the latter employee's employment. . ." (*emphasis added*).

"A party who is injured as a result of a co-employee's negligent acts, who applied for benefits under Ohio's workers' compensation statutes, and whose injury is found to be compensable thereunder is precluded from pursuing any additional common-law or

statutory remedy against such co-employee." *Kaiser v. Strall*, 5 Ohio St. 3d 91, 91–92, 449 N.E.2d 1, 1-2 (1983). Coemployee immunity extends when the actionable conduct occurs in the course of, and arising out of the coemployee's employment. *Donnelly v. Herron*, 88 Ohio St.3d 425, 428-429, 727 N.E.2d 882, 885 (2000). This system is akin to, but actually ameliorates the harshness of, the immunity provided by the fellow servant rule under federal common law. *See Railroad Co v. Baugh*, 149 U.S. 368, 390, 13 S.Ct. 914 (1893) (common law defense stemmed from the concept that employees accepted the risk of their co-workers as an absolute bar to claims).

Kilnapp's factual allegations are more akin to claims that Officer Gannon, a fellow employee, failed to exercise due care in his response to Borden. Kilnapp has an allowable claim for injuries sustained by a gunshot wound suffered on "07/20/2020" while employed by "CLEVELAND" in Claim number 20-151465 (*Exhibit C*). Because Kilnapp previously replied upon the position that she suffered a compensable injury in the course of her employment, she cannot now attempt to avoid immunity by taking a contrary position. Therefore, all of Kilnapp's claims against Officer Gannon are barred.

## V. CONCLUSION

For all of the aforementioned reasons, Kilnapp cannot maintain her two excessive force claims against Officer Gannon as a matter of law. Kilnapp must demonstrate beyond a sheer possibility that she could succeed on her claims against him. She cannot do so.

Respectfully submitted,

By: */s/ J.R. Russell*

Craig J. Morice (0065424)
James R. Russell, Jr. (0075499)
Assistant Directors of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
Email: JRussell2@clevelandohio.gov
*Attorneys for Defendant Officer Gannon*

## **LOCAL RULE CERTIFICATION**

This case is currently assigned to the standard track. This motion conforms to the page limitations and requirements set forth in Local Rule 7.1, and was filed within the time limits mandated by the Rules.

*/s/ J.R. Russell*
James R. Russell, Jr. (0075499)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing document was filed electronically on the 22nd day of September, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A DVD containing Exhibit B will be filed manually, and mailed to counsel.

*/s/ J.R. Russell.*
James R. Russell, Jr. (0075499)