UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JENNIFER KILNAPP,** | ) | CASE NO. 1:22CV1225 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| **CITY OF CLEVELAND, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, SR. J.**:

This matter comes before the Court upon the Motion (ECF DKT #12) of Defendants City of Cleveland, Dornat Drummond and Bailey Gannon (in their official capacities) to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and the Motion (ECF DKT #15) of Defendant Bailey Gannon for Judgment on the Pleadings. For the following reasons, the City Defendants' Motion is granted in part and denied in part; Defendant Gannon's Motion is denied.

**I. FACTUAL BACKGROUND**

On July 20, 2020, Plaintiff Cleveland Police Officer Jennifer Kilnapp and her rookie partner, Defendant Bailey Gannon, responded to a call on the east side of Cleveland of an

emotionally disturbed man with a gun on the second floor of a boarding house. When they arrived on the scene, Gannon went ahead to the second floor bathroom and Plaintiff took her position a few feet behind. Plaintiff alleges that Gannon did not knock and announce that they were police officers; did not try to de-escalate the situation; and did not call for backup. Instead, Gannon opened the door and saw a man with a gun. Plaintiff alleges that Gannon panicked and ran past her down the stairs. Further, Plaintiff alleges that Gannon pointed his gun over his head behind him and began shooting. A bullet struck Plaintiff. Plaintiff was rushed to the hospital by EMS and she underwent surgery. Nearly two years later, Plaintiff still has nerve damage, PTSD and is unable to return to duty.

According to the within Complaint (ECF DKT #1) filed on July 13, 2022, the Bureau of Criminal Investigations ("BCI") and the Cleveland Police Department investigated and charged the man in the house, Daryl Borden, with Attempted Murder. Plaintiff alleges that Gannon told homicide detectives that when he opened the door, Borden was holding the gun with two hands pointing at the door. Plaintiff alleges that trajectory tracing and audio testing of Gannon's body camera prove that Gannon shot first, not Borden. Subsequent ballistics, Plaintiff says, show that Gannon shot her. Allegedly, the Cleveland Division of Police did not inform Plaintiff that Gannon shot her until the Spring of 2021. The Attempted Murder charges against Borden were dropped in June of 2021; but Borden was sentenced after a plea of guilty to Attempted Felonious Assault on a Peace Officer on July 1, 2021.

Plaintiff was suspended in March of 2021 for not turning on her body camera before entering the house. On the other hand, Gannon was not disciplined for his allegedly misleading description of the event nor for shooting his partner in flagrant violation of basic

gun safety rules.

Plaintiff alleges that the force Gannon used was unreasonable and excessive, in violation of the Fourth Amendment. By shooting Plaintiff, Gannon seized her within the meaning of the Fourth Amendment. (*Id*. at ¶ 100). Plaintiff further alleges that Gannon intended to fire his weapon; he did not fire it accidentally. (*Id*. at ¶ 104).

Alternatively, Plaintiff alleges that Gannon used force against her maliciously and sadistically, in violation of the Fourteenth Amendment. By firing blindly at Plaintiff, Gannon's use of force was an arbitrary exercise of governmental power. (*Id.* at ¶ 115). Gannon's conduct shocks the conscience and reflects deliberate indifference towards Plaintiff's federally protected rights. (*Id*. at ¶ 120).

Moreover, Plaintiff alleges that Defendants' conduct reflects a policy or custom of the City of Cleveland and the Division of Police ("CDP"). CDP and the City of Cleveland have a policy or custom of tolerating, permitting, encouraging, or engaging in excessive force in violation of the Constitution. This policy or custom is evidenced in part by: the failure to train officers; the lack of appropriate training for new recruits; and the failure to implement effective use-of-force policies, de-escalation guidelines and methods for intervention with individuals suffering from behavioral health crises. Such failures amount to deliberate indifference to the rights of persons with whom the police come into contact and to the rights of fellow officers. These policies or customs were closely related to, or actually caused Plaintiff's injuries. (*Id*. at ¶¶ 88-89). Plaintiff alleges that the Chief of Police ratified Gannon's shooting of Kilnapp by failing to discipline him for it or to further investigate. (*Id*. at ¶ 98).

Therefore, Plaintiff alleges that all Defendants are liable for violating her constitutional rights pursuant to 42 U.S.C. § 1983.

On September 16, 2022, Defendants City of Cleveland, Chief Drummond and Officer Gannon filed a Motion to Dismiss the Complaint in its entirety.

On September 22, 2022, Defendant Gannon filed a Motion for Judgment on the Pleadings based upon qualified and common law immunity.

## II. LAW AND ANALYSIS

### Fed.R.Civ.P. 12(b)(6) Standard of Review

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement

to relief.  *Id*. at 679.

When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.  *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

**Fed.R.Civ.P. 12(c) Standard of Review**

After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.  Fed.R.Civ.P. 12(c).  In this jurisdiction, "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) . . . We 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'"  *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir. 2007) (citations omitted).  The pleading does not have to demonstrate probability; rather, "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim."  *Haber v. Rabin*, No. 1:16CV546, 2016 WL 3217869, at *3 (N.D.Ohio Jun.10, 2016), citing *Twombly*, 550 U.S. at 556.

The court's decision "rests primarily upon the allegations of the complaint;" however, "exhibits attached to the complaint [] also may be taken into account."  *Barany-Snyder v Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (citation omitted) (brackets in the original).

The court need not accept as true legal conclusions or unwarranted factual inferences.

*Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 405 (6th Cir. 1998). The complaint must state a plausible claim for relief. "Plausibility is a context-specific inquiry, and the allegations in the complaint must 'permit the court to infer more than the mere possibility of misconduct,' namely, that the pleader has 'show[n]' entitlement to relief." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

**<u>42 U.S.C. § 1983</u>**

To sustain an action under 42 U.S.C. § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under color of state law; and that the conduct deprived the plaintiff of a federal constitutional or statutory right. *See Haines v. Saginaw Police Dept.*, 35 F.3d 565 (6th Cir. 1994) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)). Deprivation of a plaintiff's rights, privileges, or immunities secured by the Constitution and federal laws is the threshold requirement of a Section 1983 action.

Plaintiff alleges a violation of her Fourth Amendment right to be free from unreasonable seizure and her Fourteenth Amendment right to substantive due process.

**<u>Fourth Amendment Violation</u>**

To establish a claim for unreasonable seizure, a plaintiff must show that a seizure actually occurred and that the seizure was unreasonable under the circumstances. *Brower v.*

*County of Inyo*, 489 U.S. 593 (1989). "[V]iolation of the Fourth Amendment requires an intentional acquisition of physical control. As a result, a seizure occurs even when an unintended person or thing is the object of the detention or taking, so long as the detention or taking itself is willful." *Id.* at 596. "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The act of firing a gun is intentional, even if the result is not the one anticipated. *See, Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011). "Seizure" cannot be applied to an unknowing act. *Brower*, 489 U.S. at 596.

**Fourteenth Amendment Violation**

"Fundamentally, the substantive component of the due process clause insulates citizens against the arbitrary exercise of governmental power." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000), citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Conduct of a law enforcement officer towards a citizen which "shocks the conscience" denies the victim fundamental substantive due process. *Id*. at 847.

**A. OFFICER BAILEY GANNON**

Defendant Gannon moves for dismissal of Plaintiff's claims as a matter of law pursuant to Fed.R.Civ.P. 12(c). (ECF DKT #15). He argues that he is shielded from suit by qualified immunity because Plaintiff fails to demonstrate a violation of her rights under the Fourth or Fourteenth Amendments for an unintentional injury that he may have caused. Moreover, any alleged constitutional violation was not clearly established. In addition, Defendant Gannon asserts immunity under the common-law Fireman's Rule and the Fellow

Servant Doctrine under Ohio's Worker's Compensation System.

To reiterate, Plaintiff alleges that Gannon did not announce that they were police officers; rather, he opened the bathroom door in the boarding house and saw a man with a gun. Plaintiff further alleges that Gannon panicked and ran past her down the stairs. Then, Gannon pointed his gun over his head behind him and began shooting. One of his bullets struck Plaintiff. Gannon intended to fire his weapon; he fired first; and by shooting Plaintiff, he seized her within the meaning of the Fourth Amendment. Based upon those facts, Defendant Gannon's use of deadly force was unreasonable and excessive. Also, in violation of the Fourteenth Amendment, Gannon's conduct shocks the conscience and shows deliberate indifference towards Plaintiff's federally protected rights.

In his Answer (ECF DKT #14), Defendant Gannon admits that a bullet from his service weapon inadvertently struck his partner on or about July 20, 2020, but denies the remaining allegations of Paragraph 1 of the Complaint. (ECF DKT #14 at ¶ 1). In ¶ 2 of his Answer, Defendant admits that detectives and investigators conducted an examination of the scene; and that on July 1, 2021, the State dismissed five counts of the indictment in *State v. Borden*, Cuyahoga County Case No. CR-20-651870-A, after Darryl Borden pleaded guilty to attempted felonious assault (peace officer) 2923.02/2903.11 A(1) F2 with firearm specification(s). Defendant admits that he did not announce that he was a police officer outside of the bathroom door, and admits that Darryl Borden was standing in the bathroom holding a firearm when he opened the door. (ECF DKT #14 at ¶¶ 9-10).

The Court finds that Plaintiff has plausibly alleged violations by Defendant Gannon of her rights under the Fourth and Fourteenth Amendments. The Court also notes that the

pleadings pose questions of fact as to whether Defendant fired first or in reaction to shots coming from the armed man in the boarding house bathroom, and whether Defendant's actions were intentional or inadvertent.

**Qualified immunity**

The doctrine of qualified immunity is "available to government officials performing discretionary functions." *Painter v. Robertson*, 185 F.3d 557, 566 (6th Cir. 1999). The doctrine provides "immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S.194, 200-201. A government official will be entitled to immunity from suit as long as his conduct does not violate "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Painter*, 185 F.3d at 567.

"The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 562-63 (6th Cir. 2011).

The Sixth Circuit has recognized that while "insubstantial claims against government officials should be resolved as early in the litigation as possible, . . . it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Moreover, the Sixth Circuit has held that although "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir. 2015).

Reading Plaintiff's Complaint against Defendant Gannon most favorably, the Court

holds that Plaintiff makes plausible claims that Defendant Gannon used excessive and unreasonable deadly force under the circumstances, and that Defendant Gannon could not have reasonably believed the use of deadly force was lawful.

Clearly, material issues of fact remain to be determined and foreclose resolution on a Fed.R.Civ.P. 12(c) motion, which the Court analyzes in the same manner as a Fed.R.Civ.P. 12(b)(6) motion. Defendant Gannon is not entitled to qualified immunity at this stage of the proceedings.

**State-law immunities**

Defendant Gannon argues that Plaintiff's claims against him are barred by the common-law Fireman's Rule and the Fellow Servant Doctrine under Ohio's Worker Compensation statutes. This argument fails.

At the outset, the Court recognizes that like all individual police officers, Plaintiff retains her constitutional rights, which if violated by a state actor, can result in liability under § 1983. Police officers do not forfeit constitutional rights when they join the municipal police force. *See, e.g., Jensen v. City of Oxnard*, 145 F.3d 1078 (9th Cir.), *cert. denied*, 525 U.S. 1016 (1998).

Moreover, "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988), quoting *Free v. Bland*, 369 U.S. 663, 666 (1962). "Accordingly, we have held that a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy, *see*

*Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980)."

*Felder*, 487 U.S. at 139.

Defendant's request for dismissal of the Complaint on the basis of common-law and state statutory immunities is denied.

The Court finds that material issues of fact exist; that qualified immunity and state law immunities do not foreclose the Complaint; and that Defendant Gannon is not entitled to judgment as a matter of law under Fed.R.Civ.P. 12(c).

## B.  CITY OF CLEVELAND DEFENDANTS

### Official capacity claims

Defendants contend that Plaintiff's claims against the individual Defendants, Dornat Drummond and Bailey Gannon, in their official capacities should be dismissed. The Court agrees.

Official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166, citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

Thus, for example, a suit against a municipal employee in his official capacity is the equivalent of a suit against the public entity itself. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003).

Therefore, since Defendants Drummond and Gannon are employees of the City of

Cleveland, and since the City has been named and served with notice of the suit, Plaintiff's claims against the individual Defendants in their official capacity are dismissed as duplicative of claims against Defendant City of Cleveland.

**Municipal liability**

The City Defendants move for dismissal of Plaintiff's Complaint in its entirety for failure to state a claim under Fed.R.Civ.P. 12(b)(6). (ECF DKT #12).

The cause of action created by § 1983 may be exercised only against a "person who . . . causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Supreme Court has interpreted the word "person" broadly; and municipalities, are considered "persons" for purposes of § 1983 liability. *Monell*, 436 U.S. at 690.

Although "person" has been given a broad interpretation under § 1983, when the person is a municipality, liability attaches only under a narrow set of circumstances: "A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691). Instead, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff may accomplish this by showing that the municipality had a "policy or custom" that caused the violation of his rights. *Monell*, 436 U.S. at 694.

There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; **or** (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). (Emphasis added).

Defendants argue that Plaintiff's allegations are nothing more than "formulaic" and "conclusory." They contend that the Complaint does not discuss particular shortcomings of the City or the CDP nor how those shortcomings caused Gannon's "split second decision."

Plaintiff is not required to demonstrate every one of the four avenues to municipal liability under § 1983. In fact, Plaintiff need ultimately only prove one.

A reading of the Complaint shows that Plaintiff relies most heavily upon the City's policy of inadequate training and its custom of tolerance for federal rights violations.

As for tolerating and acquiescing in civil rights violations: "CDP took no disciplinary action against Gannon for misleading investigators, despite their determination that his version of events could not possibly be true." (ECF DKT #1 at ¶ 70). "CDP also chose not to discipline Gannon for shooting his partner by firing blindly over his head while running in the other direction, even though his actions flagrantly violated the most basic gun-safety rules." (*Id.* at ¶ 71). "In December 2014, the U.S. Department of Justice found that the Cleveland Division of Police had engaged in an ongoing pattern and practice of excessive force, as well a litany of other failures regarding training and implementation of constitutionally appropriate use-of-force and de-escalation policies and procedures." (*Id*. at ¶ 81). Moreover, Plaintiff

alleges that these deficiencies continued through July of 2020 when this incident occurred; and that the policies of the City were "closely related to or actually caused the injury." (*Id.* at 89).

With regard to failure to train: "CDP and the City of Cleveland have a policy or custom of failing to adequately train officers—particularly new officers and recruits—in various relevant areas, including: the use of force; intervention with individuals suffering from behavioral health crises; de-escalation; and other officer-safety tactics. Such failures amount to deliberate indifference to the rights of persons with whom the police come into contact and the rights of fellow officers themselves." (*Id.* at ¶ 96).

To repeat the 12(b)(6) standard: "In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d at 476. Specific facts are not necessary at this juncture; rather, Plaintiff is required to "give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part, *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)).

With the benefit of discovery, Plaintiff may be able to show that a custom or policy of tolerance exists, what its scope might be or how it resulted in a violation of her constitutional rights. Plaintiff may "demonstrate that the inadequate training was the result of deliberate indifference by providing prior instances of unconstitutional conduct reflecting that the municipality ignored a history of abuse, and was on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir.

2005). Plaintiff may additionally be able to "show that such a training failure has the "'highly predictable consequence' of constitutional violations of the sort Plaintiff suffered." *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006)(citation omitted).

However, Plaintiff does not bear this evidentiary burden now. Instead, Plaintiff's Complaint must offer "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim." *Haber v. Rabin*, No. 1:16CV546, 2016 WL 3217869, at *3 (N.D.Ohio Jun.10, 2016), citing *Twombly*, 550 U.S. at 556.

The Court finds that Plaintiff's Complaint alleges a plausible claim of municipal liability under 42 U.S.C. § 1983. The Motion of the City of Cleveland Defendants to Dismiss is denied in this regard.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #12) of Defendants City of Cleveland, Dornat Drummond and Bailey Gannon (in their official capacities) to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) is granted in part and denied in part; and the Motion (ECF DKT #15) of Defendant Bailey Gannon for Judgment on the Pleadings is denied.

**IT IS SO ORDERED.**

**DATE: December 9, 2022**

        s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**