UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER KILNAPP, | ) | CASE NO. 1:22CV1225 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #61) of Defendant Bailey Gannon for Summary Judgment. For the following reasons, the Motion is denied.

**I. BACKGROUND**

In August of 2017, Plaintiff Jennifer Kilnapp became a police officer with the Cleveland Division of Police ("CDP"). Defendant Bailey Gannon became a Cleveland police officer in May of 2020 and began his one-year probationary period with the CDP. In the summer of 2020, Plaintiff was assigned to partner with Defendant as his training officer and among other things, to teach him the right protocol for handling calls. (Kilnapp Deposition, ECF DKT #60-1 at 26).

In the early morning hours of July 20, 2020, Plaintiff and Defendant responded to a call from dispatch that a female reported a man had shot a hole into the floorboards in a boarding house. When they arrived at the address, Plaintiff and Defendant encountered the female caller outside a two-story house. They learned that a man, since identified as Darryl Borden and nicknamed "Moose," was upstairs. The building was completely dark. The officers entered with their weapons in hand. Plaintiff's firearm had an attached flashlight. Defendant had a flashlight in his right hand and his firearm in his dominant left hand. The officers routinely activated their

body cameras at the same time upon arrival at the scene.  (ECF DKT #60-1 at 70).  On this occasion Defendant's went on; Plaintiff's did not.  (*Id*.).

The staircase had two flights:  a set of stairs going one direction, a landing and then a second set going the opposite direction.  Defendant went upstairs first.  Plaintiff felt this was a "good training opportunity" for him.  (ECF DKT #60-1 at 76).  Plaintiff called out the nickname, "Moose" on the way upstairs but received no response.  Plaintiff does not remember announcing that she was a police officer.  (ECF DKT #60-1 at 58).  Once upstairs, Plaintiff saw the door ajar to Room 4, and she looked inside for the individual.  The female downstairs shouted that he was in the bathroom.  Defendant pushed a door open, not knowing which room was a bathroom, and then jumped back yelling.  Defendant saw a man with a gun pointed directly at him in full presentation, "firing range position."  (Gannon Deposition, ECF DKT #59-1 at 64).  Defendant frantically retreated down the stairs.  Both Plaintiff and Defendant heard gunshots. (ECF DKT #60-1 at 42; ECF DKT #59-1 at 69, 78-79, 81-82; Wearable Camera System ("WCS") footage, ECF DKT #72, Exhibit G).  Defendant fired two gunshots in return; he says in an effort to protect himself and his fellow officer.  (ECF DKT #59-1 at 72).  First, Defendant turned and fired his gun in Borden's direction.  (ECF DKT #59-1 at 64).  Then, Defendant ducked his head and wildly shot a round that went into the molding or door frame.  (ECF DKT #59-1 at 71-72).

Plaintiff was trailing behind Defendant down the stairs and exiting the building with him. (ECF DKT #59-1 at 128-129).  While on the upper flight of stairs, Plaintiff felt pain and dropped her gun.  (ECF DKT #60-1 at 43-45).  Both officers were concerned that Borden might come out after them and continue shooting.  (*Id*. at 48).  While running, Plaintiff shouted:  "I'm shot." (WCS footage, ECF DKT #72, Exhibit G; ECF DKT #59-1 at 148).  A bullet went into and

through Plaintiff's forearm, exited upward, hit her bicep, entered her right armpit and lodged in her back. (ECF DKT #60-1 at 55-56).

Neither Plaintiff nor Defendant knew whose bullet struck Plaintiff. Early investigation determined that it was Borden who shot Plaintiff and he was charged with Attempted Murder of a police officer. Plaintiff did not learn until March of 2021 that she was actually shot by a bullet from Defendant's firearm. The charge of Attempted Murder against Borden was dropped and he ultimately pled guilty to Attempted Felonious Assault (Peace Officer).

Plaintiff brought the above-captioned Complaint under 42 U.S.C. § 1983 on July 13, 2022, alleging that Defendant Bailey Gannon used excessive force against her in violation of the Fourth and Fourteenth Amendments. On September 22, 2022, Defendant Gannon moved for judgment on the pleadings on the basis of qualified immunity, which this Court denied. That denial was affirmed by the Sixth Circuit Court of Appeals on July 21, 2023. The captioned matter is now before the Court upon Defendant Gannon's Motion for Summary Judgment (ECF DKT #61). Defendant contends that he "is shielded from suit and liability by qualified immunity because: 1) Plaintiff cannot demonstrate a violation of her constitutional rights under the Fourth or the Fourteenth Amendments for an unintentional injury that he may have caused; and 2) any alleged constitutional violation was not clearly established at the time of the conduct."

## II. LAW AND ANALYSIS

### Civil Rule 56 Standard

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue

of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994). The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(I)(a), (b). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors*

-4-

*Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

## 42 U.S.C. § 1983

To sustain an action under 42 U.S.C. § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under color of state law; and that the conduct deprived the plaintiff of a federal constitutional or statutory right.  *See Haines v. Saginaw Police Dept.*, 35 F.3d 565 (6th Cir. 1994) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)). Deprivation of a plaintiff's rights, privileges, or immunities secured by the Constitution and federal laws is the threshold requirement of a Section 1983 action.

## Qualified Immunity

Qualified immunity protects governmental officials from suit as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In the Sixth Circuit, courts apply a two-step analysis.  First, "whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right[.]" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).  Then a court must determine whether the right was "clearly established" at the time of the alleged violation such "that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

## Constitutional Violation

The Fourth Amendment prohibits police from using excessive force while making an arrest or seizure.  "[V]iolation of the Fourth Amendment requires an intentional acquisition of

physical control. As a result, a seizure occurs even when an unintended person or thing is the object of the detention or taking, so long as the detention or taking itself is willful." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The act of firing a gun is intentional, even if the result is not the one anticipated. *See Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011). "Seizure" does not apply to an unknowing act. *Brower*, 489 U.S. at 596. In *Brendlin v. California*, 551 U.S. 249 (2007), the Supreme Court reaffirmed that an unintended person may be seized so long as the seizure is not the result of "an unknowing act." *Id*. at 254.

Defendant insists now, as he did in his earlier Motion for Judgment on the Pleadings, that under the authority of *Claybrook v. Birchwell*, 199 F.3d 350 (6th Cir. 2000), when an officer accidentally shoots a fellow officer while confronting an armed suspect there is no Fourth Amendment seizure because the officer could not "seize" any person other than the deliberate object of his exertion of force. As the Sixth Circuit noted in its affirmance of this Court's denial of judgment on the pleadings, the Supreme Court decision in *Brendlin* holds clearly otherwise and controls over the earlier appellate decision in *Claybrook*. *Kilnapp v. City of Cleveland*, No. 22-4059, 2023 WL 4678994, fn. 4 (6th Cir. Jul. 21, 2023).

Defendant fired his gun intentionally, though the individual impacted by the bullet he fired was unintended. Plaintiff was seized and is protected under the Fourth Amendment. Because the Court finds that the Fourth Amendment applies, there is no need to analyze Plaintiff's alternative claim of a Fourteenth Amendment violation.

**<u>Clearly Established Right</u>**

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

(2011) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006)). "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (*citing United States v. Mendenhall*, 446 U.S. 544 (1980)). Plaintiff's "status as a police officer does not remove her from the protections of the Fourth Amendment." *Kilnapp v. City of Cleveland*, No. 22-4059, 2023 WL 4678994, at *5.

For his part, Defendant argues the prevailing rule is that bystanders [and fellow officers] are not "seized" for Fourth Amendment purposes when inadvertently or accidentally shot. Defendant points again to the *Claybrook* case as illustrating established law in the Sixth Circuit. However, the Sixth Circuit has already dispatched that contention based upon subsequent controlling Supreme Court authority. Defendant also asserts that there is no clearly established right under the facts here; and he directs the Court's attention to the out-of-Circuit case of *Neal v. St. Louis Cnty. Bd. of Police Comm'rs*, 217 F.3d 955 (8th Cir. 2000). Defendant argues: "An officer does not violate the constitutional rights of another when he accidently shoots a fellow officer during a shootout with an armed suspect potentially threatening the officer. *Id*., 957." (ECF DKT #61 at 20). After reading the *Neal* opinion, the Court determines that, despite the factual similarities, it is of no assistance to Defendant's position and is distinguishable. *Neal* is analyzed under the "conscience shocking" rubric of the Fourteenth Amendment, and not as a Fourth Amendment seizure.

For a clearly established right, there does not need to be "a case directly on point." *al-Kidd*, 563 U.S. at 741. "It has been clearly established in this circuit for some time that individuals have a right not to be shot unless they are perceived as posing a threat to officers or

others." *Jacobs v. Alam*, 915 F.3d 1028, 1040 (6th Cir. 2019) (quoting *King v. Taylor*, 694 F.3d 650, 664 (6th Cir. 2012)).  Although there may be few available case decisions involving officers wounding their fellow officers, "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  "The exact circumstances of the particular case need not have been previously held illegal for the right to be "clearly established," but the right must be clear in a particularized way to put the official on notice that his conduct is illegal.  *See Scicluna v. Wells*, 345 F.3d 441, 446 (6th Cir. 2003); *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002).

**Reasonableness**

"[T]he reasonableness of the use of force is the linchpin of the case."  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998).  The use of deadly force is excessive and unreasonable unless there is probable cause to believe that the suspect poses an immediate threat to the officer or to others.  *Garner*, 471 U.S. at 11.  A probable cause determination turns on the facts and circumstances of each particular case.  *Graham v. Connor*, 490 U.S. 386, 396 (1989). The reasonableness test is an objective one, to be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*

Plaintiff believes the evidence shows that Defendant's use of force was unreasonable. Plaintiff disputes the threat posed by Darryl Borden.  While Defendant testifies that when he opened the bathroom door Borden pointed a gun directly at him, Plaintiff contends that the body cam footage does not confirm that.  Sergeant Mitchell Sheehan (Internal Affairs), who was on scene after the incident and was part of the Force Investigation Team ("FIT") studying this officer-involved shooting, admits on deposition that the footage is not clear and how exactly

-8-

Borden's gun was held or aimed is not clear from the recording.  (Sheehan Deposition, ECF DKT #66-1 at 61, 64-65).

Plaintiff argues that screen shots taken from the WCS recording show Borden's one hand on the door; thus calling into question the "firing range position" that Defendant describes seeing upon opening the bathroom door.  Keeping in mind that the boarding house was completely dark except for the officers' flashlights, Plaintiff is compelled to admit that she never saw the suspect (ECF DKT #60-1 at 59) nor the inside of the bathroom (ECF DKT #60-1 at 62).

Neither Plaintiff nor Defendant could say whether Borden came out of the bathroom when they heard the shots.  Both officers were hurrying frantically down the stairs and out of the house.  (ECF DKT #60-1 at 167-168).  Nevertheless, Plaintiff insists that subsequent BCI scans of the structure and of the bullets' approximate trajectory illustrate that Borden never left the bathroom and shot at least twice through the door into the wall in the hallway.  (Plaintiff's Opposition, ECF DKT #69 at 9-12).

Plaintiff contends that Defendant used deadly force in an unreasonable manner.  The possible trajectory of the bullets, combined with Defendant's height and his movement down the stairs, illustrates he may have been holding his weapon over his head or at least above eye-level.  (*Id*. at 11-12).  On the other hand, Defendant testifies that while retreating, he turned in Borden's direction and returned fire with his left hand.  (ECF DKT #59-1 at 64).  Defendant later learned that this first shot must have been the one that struck Plaintiff.  Defendant ducked his head and "inadvertently" shot a second time.  This bullet went into the molding or door frame.  (*Id*. at 71).

Although the CDP internal investigation concluded Defendant's use of lethal force was justified, Plaintiff questions whether it was reasonable for him to turn and shoot when Plaintiff

-9-

was likely following behind in the line of fire. In this regard, Defendant admits that he had no visible, verifiable target because he could not see Borden. (ECF DKT #59-1 at 134-135). Then again, would proper protocol permit Plaintiff to trail behind Defendant and place herself in the crossfire between the stairway and the bathroom on the upper floor? Plaintiff was admittedly Defendant's training officer and Defendant was a probationary rookie at the time of the incident. At the moment Borden's and Defendant's gunshots rang out, only Defendant's camera was operating. There might be more clarity if Plaintiff's body camera had also been functioning.

The Court must view the facts in the light most favorable to Plaintiff on Defendant's Motion for Summary Judgment. *Matsushita*, 475 U.S. at 587. "Qualified immunity in cases involving claims of excessive use of deadly force is difficult to determine on summary judgment because an officer's liability turns upon the Fourth Amendment's reasonableness test." *Withers v. City of Cleveland*, 640 Fed. App'x at 419; *Sova*, 142 F.3d at 902. It bears repeating that the use of force should be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. "[S]ummary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force. When 'the legal question ... is completely dependent upon which view of the facts is accepted by the jury,' the District Court cannot grant a defendant police officer immunity from a deadly force claim." *Sova*, 142 F.3d at 903 (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 215–16 (6th Cir. 1989)). When the question of qualified immunity turns upon which version of the facts is accepted, the jury must determine liability. *Scozzari v. Miedzianowski*, 454 Fed. App'x 455, 463 (6th Cir. 2012); *Sova*, 142 F.3d 903.

### III. CONCLUSION

For all these reasons, the Motion (ECF DKT #61) of Defendant Bailey Gannon for

Summary Judgment is denied.


**IT IS SO ORDERED.**

**DATE: 2/13/2025**        **s/Christopher A. Boyko**
                          **CHRISTOPHER A. BOYKO**
                          **United States District Judge**

-11-