**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JENNIFER KILNAPP,** | ) | **CASE NO. 1:22CV1225** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| **CITY OF CLEVELAND, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #88) of Defendant

Bailey Gannon for Judgment on Plaintiff Jennifer Kilnapp's Fourteenth Amendment Claim.  For

the following reasons, Defendant's Motion is granted and Defendant is entitled to qualified

immunity on the Fourteenth Amendment Claim.

## I. BACKGROUND

In August of 2017, Plaintiff Jennifer Kilnapp became a police officer with the Cleveland

Division of Police ("CDP").  Defendant Bailey Gannon became a Cleveland police officer in

May of 2020 and began his one-year probationary period with the CDP.  In the summer of 2020,

Plaintiff was assigned to partner with Defendant as his training officer and among other things, to

teach him the right protocol for handling calls.  (Kilnapp Deposition, ECF DKT #60-1 at 26).

In the early morning hours of July 20, 2020, Plaintiff and Defendant responded to a call

from dispatch that a female reported a man had shot a hole into the floorboards in a boarding

house.  When they arrived at the address, Plaintiff and Defendant encountered the female caller

outside a two-story house.  They learned that a man, since identified as Darryl Borden and

nicknamed "Moose," was upstairs.  The building was completely dark.  The officers entered with their weapons in hand.  Plaintiff's firearm had an attached flashlight.  Defendant had a flashlight in his right hand and his firearm in his dominant left hand.  The officers routinely activated their body cameras at the same time upon arrival at the scene.  (ECF DKT #60-1 at 70).  On this occasion Defendant's went on; Plaintiff's did not.  (*Id*.).

The staircase had two flights:  a set of stairs going one direction, a landing and then a second set going the opposite direction.  Defendant went upstairs first.  Plaintiff felt this was a "good training opportunity" for him.  (ECF DKT #60-1 at 76).  Plaintiff called out the nickname, "Moose" on the way upstairs but received no response.  Plaintiff does not remember announcing that she was a police officer.  (ECF DKT #60-1 at 58).  Once upstairs, Plaintiff saw the door ajar to Room 4, and she looked inside for the individual.  The female downstairs shouted that he was in the bathroom.  Defendant pushed a door open, not knowing which room was a bathroom, and then jumped back yelling.  Defendant saw a man with a gun pointed directly at him in full presentation, "firing range position."  (Gannon Deposition, ECF DKT #59-1 at 64).  Defendant frantically retreated down the stairs.  Both Plaintiff and Defendant heard gunshots. (ECF DKT #60-1 at 42; ECF DKT #59-1 at 69, 78-79, 81-82; Wearable Camera System ("WCS") footage, ECF DKT #72, Exhibit G).  According to Defendant, Borden fired shots first.  (ECF DKT #59-1 at 79).  Defendant fired two gunshots in return; he says in an effort to protect himself and his fellow officer.  (ECF DKT #59-1 at 72).  Defendant turned and fired his gun in Borden's direction.  (ECF DKT #59-1 at 64).  Then, Defendant ducked his head and wildly shot a round that went into the molding or door frame.  (ECF DKT #59-1 at 71-72).

Plaintiff was trailing behind Defendant down the stairs and exiting the building with him.

-2-

(ECF DKT #59-1 at 128-129).  While on the upper flight of stairs, Plaintiff felt pain and dropped her gun.  (ECF DKT #60-1 at 43-45).  Both officers were concerned that Borden might come out after them and continue shooting.  (*Id*. at 48).  While running, Plaintiff shouted:  "I'm shot." (WCS footage, ECF DKT #72, Exhibit G; ECF DKT #59-1 at 148).  A bullet went into and through Plaintiff's forearm, exited upward, hit her bicep, entered her right armpit and lodged in her back.  (ECF DKT #60-1 at 55-56).

Plaintiff brought the above-captioned Complaint under 42 U.S.C. § 1983 on July 13, 2022, alleging that Defendant Bailey Gannon used excessive force against her in violation of the Fourth and Fourteenth Amendments.  On September 22, 2022, Defendant moved for judgment on the pleadings on the basis of qualified immunity, which this Court denied.  That denial was affirmed by the Sixth Circuit Court of Appeals on July 21, 2023.

Following discovery, Defendant moved for summary judgment in his favor (ECF DKT #61), renewing his qualified-immunity arguments.  The Court denied Defendant's Motion because there were factual disputes about the reasonableness of the use of deadly force which were more appropriately left to a jury's determination.  Defendant appealed.

The Sixth Circuit ruled that Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment Claim because the law regarding the seizure of an unintended target was not clearly established at the time of the shooting.  This Court did not reach the alternative claim of a Fourteenth Amendment violation; so, the Sixth Circuit vacated and remanded with instructions to grant judgment in Defendant's favor on the Fourth Amendment Claim and to address the Fourteenth Amendment Claim.

Defendant filed his Motion for Judgment (ECF DKT #88) regarding qualified immunity

on the Fourteenth Amendment Claim on April 27, 2026, and the Motion is fully briefed and ripe for ruling.

## II. LAW AND ANALYSIS

### Civil Rule 56 Standard

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994).  The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(I)(a), (b).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The

burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**42 U.S.C. § 1983**

To sustain an action under 42 U.S.C. § 1983, a plaintiff must show that the conduct complained of was committed by a person acting under color of state law; and that the conduct deprived the plaintiff of a federal constitutional or statutory right.  *See Haines v. Saginaw Police Dept.*, 35 F.3d 565 (6th Cir. 1994) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978)). Deprivation of a plaintiff's rights, privileges, or immunities secured by the Constitution and federal laws is the threshold requirement of a Section 1983 action.

**Constitutional Violation**

The Fourteenth Amendment substantive due process guarantee protects against government power arbitrarily and oppressively exercised.  *See, United States v. Salerno*, 481 U.S. 739, 746 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty' ").  The Supreme Court has made it clear that the due process

guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.  *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1988).  Rather, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  *Lewis*, 523 U.S. at 849.  "As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical."  *Id*. at 851.  "In contradistinction, in a rapidly evolving, fluid, and dangerous predicament which precludes the luxury of calm and reflective pre-response deliberation, *** public servants' reflexive actions 'shock the conscience' only if they involved force employed 'maliciously and sadistically for the very purpose of causing harm.' "  *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).

**Qualified Immunity**

Qualified immunity protects governmental officials from suit as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In the Sixth Circuit, courts apply a two-step analysis.  First, "whether the facts, when taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right[.]"  *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).  Then, a court must determine whether the right was "clearly established" at the time of the alleged violation such "that a reasonable official would understand that what he is doing violates that right."  *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

**Clearly Established**

Qualified immunity spares officers from "the time, expense and risk of money-damages

-6-

actions" unless they violate clearly established constitutional rights. *Moore v. Oakland County, Michigan*, 126 F.4th 1163, 1167 (6th Cir. 2025), citing *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012).  The Supreme Court warns against defining the constitutional rights "at a high level of generality."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).  A plaintiff must show that the right's contours were "sufficiently clear" such that "every reasonable official would have understood" that the officer's actions violated it. *Id*. at 741, 131 S.Ct. 2074 (quoting *Anderson v. Creighton*, 483 U.S. 635 at 640).  That means a plaintiff must identify a case with facts "similar enough that" it "squarely governs this one," *Lee v. Russ*, 33 F.4th 860, 863 (6th Cir. 2022), that is, what amounts to "on-point caselaw that would bind a panel of this court."  *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022).  In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate."  *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018); *al–Kidd,* 563 U.S. at 741, 131 S.Ct. 2074.

In the instant matter, Plaintiff insists that Defendant is not entitled to qualified immunity. Plaintiff argues that few police actions could be more "arbitrary" than an officer, like Defendant, blindly opening fire with innocent people nearby; especially where "nobody was firing at, chasing, or even pointing a gun at the officer when he chose to start shooting."  (Plaintiff's Opposition, ECF DKT #89 at 1).  The Court finds that this assertion is belied by Plaintiff's own sworn testimony.  Plaintiff acknowledges on deposition that she heard shots fired.  (ECF DKT #60-1 at 42).  Moreover, when she and Defendant were rushing out of the building, Plaintiff was concerned that Borden would come out after them and keep shooting.  (ECF DKT #60-1 at 48).

Plaintiff contends that Defendant violated the Fourteenth Amendment by deciding to

shoot without the need to do so, without either looking or aiming where he was shooting and despite knowing Plaintiff was in his line of fire.  For his part, Defendant testifies that the intent of his first shot was to stop the threat from Borden and to protect himself and Officer Kilnapp. (ECF DKT #59-1 at 69, 132).  It is true that Defendant admits that he could not see Borden nor the bathroom once he descended the stairs and opened fire.  (Requests for Admissions, ECF DKT #69-4 at 5).  While Plaintiff disputes that Borden posed a threat and pointed a gun at Defendant, she concedes that she did not see Borden herself at any point and could not see into the bathroom.  (ECF DKT #60-1 at 59, 60).

Investigations by Internal Affairs and by the Force Review Board concluded that Defendant opened fire without a verified and visible target and failed to consider his surroundings (*i.e.*, that Plaintiff was in the crossfire) before firing his weapon, in violation of firearms safety regulations.  In addition, Defendant cannot recall exactly what he saw when he pulled the trigger or how he was holding his gun.  (ECF DKT #59-1 at 134, 135-36). Nevertheless, as cited in *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992): "[T]he Supreme Court has indicated that the violation of established procedure alone is insufficient to overcome a qualified immunity claim."  *See also, Latits v. Phillips*, 878 F.3d 541, 553 (6th Cir. 2017) ("It must have been clearly established that the conduct at issue violates the Constitution, not internal policies.").  Even if Defendant's actions "violated departmental policy or were otherwise negligent, no rational fact finder could conclude, even after considering the evidence in the light most favorable to [plaintiff], that [Defendant] acted with conscience-shocking malice or sadism toward the unintended shooting victim."  *Claybrook*, 199 F.3d at 360.

> [W]hile standard operating procedures may of course call for a higher or different standard of care than does the Constitution, that does not supplant the Constitution as the source of legal liability under § 1983.  Congress made states and localities liable for constitutional violations, not violations of state and local policies.  *Napper v. Hankison*, 617 F.Supp.3d 703, 748 (W.D. Kentucky 2022).

Though Plaintiff may argue that Defendant's actions violated departmental policy or were otherwise negligent or reckless, no reasonable jury, considering the evidence in a light most favorable to Plaintiff, could find that Defendant acted with conscience-shocking malice or sadism toward Plaintiff as an unintended shooting victim.  *See Claybrook*, 199 F.3d at 360.

Plaintiff also contends that Defendant is not entitled to qualified immunity under the "clearly established" analysis.  Plaintiff posits that a "case directly on point" is not required and that the key inquiry is whether Defendant had "fair warning" that his actions were unconstitutional.  Plaintiff quotes *Hart v. Michigan*, 138 F.4th 409, 423-24 (6th Cir. 2025) for the proposition that "precedent makes clear that officers have fair warning that they may not use deadly force where the suspect poses no immediate threat to the officer and no threat to others in the area ... ."  However, the *Hart* proposition of law is not applicable to the facts here which illustrate that Borden posed an immediate threat to the two officers.  As stated previously, Plaintiff concedes that she heard shots fired by Borden and feared he would continue to shoot as she and Defendant fled the building.  (ECF DKT #60-1 at 42, 48).

Plaintiff concludes that Defendant was on notice that his conduct violated established law despite the lack of binding precedent "where another officer took 'unnecessary' risks by shooting blindly with their partner right behind them in the line of fire."  (ECF DKT #89 at 10).  Plaintiff insists that the constitutional violation is obvious.  Although identical facts may not exist in Sixth Circuit case law, Plaintiff nonetheless fails to satisfy her "burden to identify a closely analogous

precedent with 'facts like the ones at issue here' that placed the constitutional question beyond debate,' [with] 'on-point caselaw that would bind a panel of this court.' " *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 603 (6th Cir. 2025), quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021).

Defendant may receive the benefit of the qualified immunity defense "unless [he] could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed [his] specific conduct." *Zorn v. Linton*, 607 U.S. —, 146 S.Ct. 926, 930 (2026); *County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015).

### III. CONCLUSION

The Fourteenth Amendment's "malicious or sadistic" test of conscience-shocking behavior controls in the within case; but the facts do not rise to the level of this standard. Defendant had no opportunity in this rapidly evolving situation to deliberate his reaction to Borden's dangerous and threatening actions and to formulate a malicious or sadistic intent to injure. *Claybrook*, 199 F.3d at 360. Moreover, Plaintiff has not identified any clearly-established precedent, controlling authority or "robust consensus of cases of persuasive authority" which renders Defendant's conduct unconstitutional beyond debate. *See al-Kidd*, 563 U.S. at 741-742. Therefore, the Motion (ECF DKT #88) of Defendant Bailey Gannon for Judgment on Plaintiff Jennifer Kilnapp's Fourteenth Amendment Claim is granted and Defendant is entitled to qualified immunity on that Claim.

**IT IS SO ORDERED.**

**DATE: July 17, 2026**           **s/Christopher A. Boyko**
                                  **CHRISTOPHER A. BOYKO**
                                  **United States District Judge**